PEOPLE *v.* IACONIS

PEOPLE *v.* BERCHENY

PEOPLE *v.* CHWALEK

PEOPLE *v.* DAVIS

PEOPLE *v.* FARENGER

PEOPLE *v.* CURTIS

1. SEARCHES AND SEIZURES—WARRANT—PROBABLE CAUSE—EVIDENCE —SUFFICIENCY.

   A finding of probable cause sufficient to justify issuance of a search warrant may rest upon evidence which is not sufficient to justify condemnation and may not be legally competent in a criminal trial, because it is only the probability, and not a *prima facie* showing, of criminal activity that is the standard of probable cause.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures §§ 21–25.
[2, 3] 47 Am Jur, Searches and Seizures § 26.
[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45, 47.
[5] 16 Am Jur 2d, Conspiracy § 132.
[6] 16 Am Jur 2d, Conspiracy §§ 34, 35.
[7] 21 Am Jur 2d, Criminal Law §§ 447, 449.
[8] 21 Am Jur 2d, Criminal Law §§ 443, 444, 447, 449, 450.
[9] 21 Am Jur 2d, Criminal Law § 455.
[10] 47 Am Jur 2d, Jury § 121.
[11] 30 Am Jur 2d, Evidence §§ 327, 1175.
[12] 16 Am Jur 2d, Conspiracy §§ 35, 36, 38, 61.
[13] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 46.
[14, 16] 21 Am Jur 2d, Criminal Law § 172.
[15] 21 Am Jur 2d, Criminal Law §§ 175, 176, 180, 195.
[17] 21 Am Jur 2d, Criminal Law §§ 195, 198.

2. SEARCHES AND SEIZURES—WARRANT—PROBABLE CAUSE—AFFIDAVIT
—SUFFICIENCY.

An affidavit for the issuance of a search warrant must adequately inform the issuing magistrate of the underlying circumstances upon which a finding of probable cause can properly be based, but the affidavit must be read in a common-sense manner, and a warrant issued pursuant to it is to be preferred to action taken without a warrant.

3. SEARCHES AND SEIZURES—WARRANT—PROBABLE CAUSE—AFFIDAVIT
—SUFFICIENCY.

An affidavit for a search warrant which recited that affiant, a police officer, had received information from a fellow police officer that an informant, known to both officers to be reliable, had driven a relative to the premises in question to purchase narcotics, the relative was admitted to the premises by one of the defendants and returned in a short time with a package of an illicit narcotic drug which the informant then saw the relative prepare and inject into his body, that a ready supply of narcotics was kept in the apartment, that several persons known to the informant to be credible had gone to the apartment and purchased narcotics, that police kept a surveillance on the apartment for a number of days, that they observed persons coming and going in a suspicious manner in that visitors to the apartment enacted a specific ritual in order to gain admittance, that within moments of their entry, a bathroom light was turned on and was then turned off a very short time later, that the people left the premises within a half hour of their entry and appeared to be in a different physical condition than when they entered, as if in a narcotic stupor, that the affiant's information had been given to him or to brother police officers by an informant who had been correct, reliable, and credible on previous occasions, and that the same information had come from other sources, was sufficient, when viewed in a common-sense manner, to inform the magistrate adequately of the underlying circumstances for him to find probable cause to issue a search warrant.

4. CRIMINAL LAW—NARCOTICS—HEROIN—POSSESSION—EVIDENCE—
SUFFICIENCY.

Sufficient facts were presented for the jury to find the defendants guilty of possession and control of heroin where the people presented evidence tending to show that, while the premises were under police surveillance, defendants arrived at the premises frequently for short periods of time, that certain of

the defendants left the premises appearing to an officer experienced in observing persons under the influence of heroin to be under that influence, that when defendants and others entered the premises they enacted a ritual in order to gain admittance, that on the night of the police raid the defendants were found in close proximity to heroin and narcotics paraphernalia, and that on the night of the arrest, one of the defendants had blood marks on his shirt and a raised black and blue mark and two red dots on his arm and another had scars on the inner portion of both arms (MCLA § 335.153).

5. CONSPIRACY—AGREEMENT—PROOF—CIRCUMSTANTIAL EVIDENCE.

Proof of an express agreement is not necessary to establish the existence of a conspiracy, because a conspiracy is rarely susceptible of proof by direct evidence; therefore, a conspiracy may be shown by circumstantial evidence of such character that the minds of reasonable men may conclude that an unlawful agreement existed, taking into consideration all the facts and circumstances shown by the evidence including conduct by the defendants (MCLA § 750.157a).

6. CONSPIRACY—PROOF—HEROIN—POSSESSION—CONTROL.

The seizure of heroin and narcotics paraphernalia and other surrounding circumstances including finding the defendants in a small room in close proximity to heroin and narcotics paraphernalia, police surveillance which showed that the defendants and others frequently arrived at the premises and remained there for short periods of time, the ritual which accompanied their admission to the premises, their leaving the premises in what a police officer experience in observing persons under the influence of heroin described as a narcotic stupor, the marks and red dots found on the arm of one of the defendants, and the scars found on the inner portion of the arm of another defendant were sufficient to allow the jury to find that the defendants were guilty of a conspiracy to possess heroin (MCLA §§ 335.153, 750.157a).

7. CRIMINAL LAW—PRELIMINARY EXAMINATION—EVIDENCE—PROBABLE CAUSE—BINDING OVER.

Evidence at preliminary examination was sufficient for the magistrate to bind the defendants over for trial on the charge of conspiracy to possess heroin where there was proof that all of the defendants were found in one room at the time of the arrest, heroin and narcotic paraphernalia were found in their midst, several defendants appeared to be intoxicated by nar-

cotics, there was evidence of heroin being used, and defendants were often seen entering and leaving the premises prior to their arrest (MCLA §§ 335.153, 750.157a).

8. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE—DISCRETION.

The Court of Appeals will not substitute its judgment for that of the examining magistrate unless there has been a clear abuse of discretion in his determination of the existence of probable cause.

9. INDICTMENT AND INFORMATION—AMENDMENT—RE-EXAMINATION.

Failure to remand defendants for re-examination after an amended information was filed was not error where the original information charged two distinct crimes, possession and control of heroin, in the same count, and the amended information separated the charges into distinct counts, because the amendment was merely one of form and not of substance.

10. JURY—MISCONDUCT—INQUIRY BY COURT—DISCRETION.

Court's examination of jury was sufficient and defendants' rights were adequately safeguarded where a defense lawyer learned from a juror in another conspiracy case that that jury had been dismissed from hearing any further cases during that jury term after they returned a verdict of not guilty and made a motion for a mistrial, alleging discussions concerning the incident, and the court denied the motion after asking the jury whether "anything occurred that you may have heard of during the past week regarding the circumstances of any other case in this building that would prejudice your verdict pertaining to this jury case in any way", the jury audibly and in unison answered in the negative, and the jurors, upon request, did not raise their hands to indicate the existence of prejudice.

11. TRIAL—MOTIONS—DEFENDANTS TESTIFYING—CROSS-EXAMINATION—PRIOR CRIMINAL RECORDS—MOOT QUESTION.

No error resulted where defendants moved to instruct the prosecutor not to question defendants in their own behalf as to their past criminal records, including previous arrests, and the court indicated that the prosecution could, for purposes of impeachment, inquire as to prior arrests and convictions, and where the defendants seeking the ruling did not testify, for the question remained moot and not necessary of final determination.

12. CONSPIRACY—EVIDENCE—ORDER OF PROOF.

> The difficulty in the proof of a conspiracy requires that the court have a large discretion as to the order in which evidence should be received, and the court did not abuse its discretion where it permitted the admission into evidence of the words and acts of a defendant on dates prior to the date alleged for the conspiracy which were relevant to the establishment of the conspiracy (MCLA § 750.157a).

13. EVIDENCE—EXPERT TESTIMONY—ADDICTIVE NATURE.

> No prejudicial error resulted where the court permitted expert testimony as to the addictive nature of heroin in a trial for possession of heroin and control of heroin, where this testimony encompassed only a small portion of the testimony offered at the trial, and the testimony was relevant to proofs submitted concerning the use of narcotics by certain defendants, because "use" of narcotics may be considered when dealing with a question of possession and control of narcotics.

14. INDICTMENT AND INFORMATION—AMENDMENT—DISCHARGE OF JURY—JEOPARDY—STATUTES.

> An accused shall on his motion be entitled to a discharge of a jury if an amendment has been made to the substance of the indictment or to cure a variance between the indictment and the proof, and if the jury is so discharged, the accused shall not be deemed to have been in jeopardy (MCLA § 767.76).

15. CRIMINAL LAW—JEOPARDY—SWEARING OF A JURY.

> Jeopardy attaches to a defendant when his trial has progressed through the selection and swearing of a jury and the court may not discharge the jury and call it a mistrial without raising a bar to a subsequent trial for the same offense, except in those rare cases where the ends of justice would otherwise be defeated.

16. CRIMINAL LAW—JEOPARDY—SWEARING OF A JURY.

> A defendant who feels he has been prejudiced by an amendment to the information after trial has commenced may request a discharge of the jury, but if the accused is satisfied to proceed with the trial after and in the face of the amendment, the court has no prerogative to discharge the jury, and the provision of the statute that the accused "shall not be deemed to have been in jeopardy" cannot operate (MCLA § 767.76).

17. CRIMINAL LAW—DISCHARGE OF JURY—JEOPARDY—WAIVER.

A waiver of the right to be tried by the jury first impaneled should not be assumed, but should clearly appear on the record; therefore a waiver of jeopardy and consent to new trial cannot be assumed where defendant's five codefendants moved for a mistrial under the statutes following an amendment of the information during trial, and defendant, whose lawyer was not present at trial that day, did not join in the motion nor consent to the mistrial (MCLA § 767.76).

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 June 11, 1970, at Detroit. (Docket Nos. 7396, 7850, 7881, 7883, 7884, and 8521.) Decided January 19, 1971. Leave to appeal granted as to Bercheny May 7, 1971. 384 Mich 836.

Anthony J. Iaconis, Andrew Bercheny, Rosemary Chwalek, Robert Davis, Gerald J. Farenger, and Thomas Curtis were convicted of possession of heroin, conspiracy to possess heroin, and control of heroin. Defendants appeal. Reversed as to defendant Anthony J. Iaconis. Affirmed as to Andrew Bercheny, Rosemary Chwalek, Robert Davis, Gerald J. Farenger, and Thomas Curtis.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Ivan E. Barris (Carl Ziemba,* of counsel), for Anthony J. Iaconis on appeal.

*Louis Zaidan,* for Thomas Curtis on appeal.

*Laurence C. Burgess,* for Andrew Bercheny, Rosemary Chwalek, Robert Davis and Gerald J. Farenger on appeal.

Before: HOLBROOK, P. J., and R. B. BURNS and
O'HARA,* JJ.

HOLBROOK, P. J. Defendants Robert J. Davis, Jr.,
Gerald J. Farenger, Rosemary Chwalek, Andrew
Bercheny, Anthony J. Iaconis, and Thomas Curtis
were tried in a consolidated trial by a jury in Wayne
County Circuit Court on informations in three
counts, charging possession of 5 grams of heroin,
MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123);
conspiracy to possess 5 grams of heroin, MCLA
§ 750.157a (Stat Ann 1970 Cum Supp § 28.354[1]);
and control of 5 grams of heroin, MCLA § 335.153
(Stat Ann 1957 Rev § 18.1123). Each of the defend-
ants was convicted on each of the three counts and
sentenced to prison terms. Defendants' appeals
have been consolidated.

On August 2, 1968, at approximately 9:55 p.m.,
defendants were arrested on premises known as
14544 Warren Avenue, Dearborn, Michigan. De-
fendants had been observed at intervals, at the prem-
ises, over a period from July 17 to August 2, on
which date a search warrant was obtained, the prem-
ises raided, narcotics and narcotic paraphernalia
seized, and the arrests made. Defendants, at the
time of the police entry upon the premises, were
found in a small living room in which a quantity of
heroin was located, to which all of the defendants
were situated in close proximity.

The officers, in the course of the raid, seized
various items, admitted into evidence, including 13
piles of heroin, found on a magazine on a coffee
table in the living room; the magazine in question;
a strainer; money, consisting of four one dollar bills

---

* Former Supreme Court Justice, sitting on the Court of Appeals
by assignment pursuant to Const 1963, art 6 § 23 as amended in
1968.

and four quarters; a needle in a needle case; an eye
dropper; a glass syringe and two metal spoons, all
found atop the coffee table; a box containing 24
insulin needles; one syringe; and sterile lubricant,
found underneath the top shelf of the coffee table;
an eye dropper with needle attached; two needle
cases; and a needle, found on top of the bathroom
sink; a piece of cotton found in the bathroom; a
tissue paper with a dark brown substance on it;
two books of matches; a tablespoon; an eye dropper,
with needle attached and a substance inside the eye
dropper, all located on a kitchen table in the living
room; a syringe found between the wall and a chair
facing the table; a box of aluminum foil; a tissue
with brown spots on it; and a necktie, all found
on the couch in the living room; and a box, found on
a mantel in the living room, and containing pipe
cleaners; measuring spoons; eye droppers; two
glass syringes; needles in a case; and cigarette
rolling paper.

A preliminary examination was had on August 9,
1968, as to all of the defendants, with the exception
of Iaconis, who waived examination. At the exam-
ination, and again prior to trial, defendants, with
the exception of Iaconis, attacked the search war-
rant and filed motions to quash the warrant and
suppress evidence seized thereunder. These mo-
tions were denied.

On December 19, 1968, following the impaneling
of the jury and the taking of testimony, and after
all parties had rested, counsel for each defendant,
with the exception of Iaconis, made motions for a
mistrial based upon the prejudicial effect of alleged
duplicitous counts contained in the information as
originally filed, the first count of which carried two
charges, i.e., possession and control of heroin. A
separate information, identical to that filed as to all

defendants, was filed as to Iaconis. Counsel for defendant Iaconis was absent from court on December 19, 1968, Iaconis being represented that day by another attorney, through arrangement between counsel and the court. When the motions for mistrial were made, substitute counsel stated that he did not believe he could "make this determination" for Iaconis' attorney. The court stated that it "can make a fair inference that [Iaconis' counsel] would join" in the motion. Thereupon, the court granted a mistrial as to all defendants.

On December 23, 1968, an amended information was filed as to all defendants except Iaconis, and an identical separate amended information was filed as to Iaconis, each including three counts separating the offenses of possession and control, previously combined in count I of each of the original informations. At the beginning of the second trial, before a new jury, which commenced January 2, 1969, defendant Iaconis moved the court to quash the second information on several grounds, including double jeopardy. The court denied this motion as well as later motions by defendants for directed verdicts.

On appeal, each of the defendants raises the following issues which we restate and consider in order:

A. *Was the affidavit in support of the search warrant legally sufficient?*

The affidavit of a Dearborn police officer, in support of the search warrant issued in this cause on August 2, 1968, states in part as follows:

"The [affiant] * * * says that he has probable cause to believe and does believe that the apartment premises located at the rear of 14544 West Warren Avenue in the City of Dearborn, County of Wayne and State of Michigan, used, controlled and

occupied by Ronald Baldridge, is used as and for the unlawful possession, control, sale, administering and dispensing of narcotic drugs, and that persons resort thereto for such purposes, and that the grounds of his belief are as follows:

"That affiant is a patrolman of the Dearborn Police Department and has been a police officer in the State of Michigan for some various lengths of time assigned to the investigation and suppression of illicit and illegal narcotic operations; that affiant has been a member of said law enforcement agency for some time past and has devoted a considerable portion of his time to the suppression of this type of activity so that he is thoroughly familiar with all the methods and manners in which this operation is operated.

"That in the afternoon of Wednesday, July 10, 1968, affiant, Corporal Larry Renaud, received information from a brother police officer, Corporal Forrest Henry, to the effect that an informant known to Corporal Henry and this affiant to be reliable, credible and knowledgeable because of previous experiences with such informant, had driven a relative to these premises for the avowed purpose of purchasing a package of illicit narcotics, that such informant saw the relative enter these premises after the door was opened to him by one Ronald Baldridge, and return very shortly thereafter with a package of illicit narcotic drugs which informant then saw the relative prepare and inject into his body; further, that said Ronald Baldridge kept a ready supply of narcotic drugs on hand for sale and injection thereof in the above mentioned apartment. The informant also relates that the aforementioned person kept these same narcotics either on his person, under pillows or cushions, on window ledges or in the bathroom of said apartment. This informant goes on to relate that on several occasions, several persons known to this informant to be credible sources of information,

have gone to said apartment and purchased narcotic drugs from the above mentioned person, and that the narcotics were secreted in the above stated places, and that the last time was July 31, 1968.

"That a surveillance has been kept by members of the Dearborn Police Department of the aforementioned apartment and premises commencing July 10, 1968, and specifically including that date and July 17, 18, 19, 25, 27, 31, and August 1, 1968, on which occasions they have observed a coming and going of persons in the following suspicious manner: they come singly and in pairs, knock on the door, and Ronald Baldridge will open a blind and look out to determine who is there before letting anyone in. Within moments of such entry, a bathroom light goes on and in less time than one can urinate, the light goes off. Within a half hour, these same people leave the premises. In the majority of instances, the people leaving have left in a much different condition physically than that in which they entered, to wit: they appeared to officers watching the apartment to be in a narcotic stupor when they left, which they were not when they came in. This observation has been made from as close as two feet to the subject.

\*          \*          \*

"That it has also been observed by these police officers that each and every time that any person leaves the above mentioned premises, the said Ronald Baldridge will first open a blind and peer outside for a moment before opening the door, and in each instance, a moment or two elapses before the subjects leave.

"That this same information regarding the illicit narcotic drug traffic conducted by Ronald Baldridge has been given to the undersigned and to other officers of the Dearborn Vice Squad by other sources of information. Because the source of information mentioned in paragraph three above has given information to the undersigned or to brother police

officers on previous occasions which was found to be correct, reliable and credible, and because this same information is given by other sources, the undersigned does believe that there are now illicit and illegal narcotic drugs being secreted in the above apartment by said Ronald Baldridge, who, affiant has determined by a check of the applicable records of the State of Michigan, does not possess now or at any pertinent time in the past, a license pursuant to the terms and provisions of Act 343 of 1937, being the Uniform Narcotic Drug Act."

Defendants contend that the affidavit was insufficient to support issuance of the search warrant, thereby invalidating the warrant; that the affidavit taken as a whole falls short of the criterion announced in *Aguilar* v. *Texas* (1964), 378 US 108 (84 S Ct 1509, 12 L Ed 2d 723) and *Spinelli* v. *United States* (1969), 393 US 410 (89 S Ct 584, 21 L Ed 2d 637); and that, as a result, the evidence seized by authority of the warrant should have been suppressed.

The people contend that a search warrant must be viewed as a whole, in a common-sense manner, rather than in a technical way; that the circumstances found by officers to exist while the premises were under surveillance were consistent with what the informer said and not indicative of mere innocent activity; and that the reliability of the affiant was for the magistrate to determine. The people further assert that a reviewing court will sustain a magistrate's determination of probable cause so long as there is a substantial basis to conclude that narcotics are probably present, citing *Aguilar* v. *Texas, supra.* We agree.

In *Aguilar, supra,* the United States Supreme Court stated in part at pp 111-115:

"[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' * * * and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present * * * .'

\* \* \*

" 'Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough.'

\* \* \*

"The vice in the present affidavit is at least as great as in *Nathanson* and *Giordenello.* Here the 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not 'judge for himself the persuasiveness of the facts relied on * * * to show probable cause.' He necessarily accepted 'without question' the informant's 'suspicion,' 'belief' or 'mere conclusion.' * * *

"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying

circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf* v. *United States* [1964], 376 US 528 (84 S Ct 825, 11 L Ed 2d 887) was 'credible' or his information 'reliable'."

In the instant case, the magistrate was adequately informed of the underlying circumstances upon which a finding of probable cause for issuance of a warrant could properly be based.

That an affidavit such as that under consideration is to be read in a common-sense manner, and a warrant, issued pursuant thereto, is to be preferred to action taken without a warrant, is clearly set forth in *United States* v. *Ventresca* (1965), 380 US 102 (85 S Ct 741, 13 L Ed 2d 684) and *Spinelli* v. *United States, supra.* In *Ventresca, supra,* the Court stated in part at pp 107–109:

"[T]his Court, strongly supporting the preference to be accorded searches under a warrant, indicated that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.

\* \* \*

"While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term "probable cause" \* \* \* means less than evidence which would justify condemnation,' \* \* \* and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. *Draper* v. *United States* [1959], 358 US 307, 311 (79 S Ct 329, 3 L Ed 2d 327, 331).

\* \* \*

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion.

They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.   *   *   *

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

See also, *United States* v. *Bridges* (CA 8, 1969), 419 F2d 963.

In *Spinelli, supra,* the Supreme Court stated the following in regard to probable cause at p 419:

"In holding as we have done, we do not retreat from the established propositions that only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause,   *   *   * that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial,   *   *   * that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense,   *   *   * and that their determination of probable cause should be paid great deference by reviewing courts."

We conclude, upon the authority of the above cases, that the affidavit in question, viewed in a common-sense manner, afforded the magistrate sufficient probable cause to issue a search warrant in this case, and that his action was proper.

B. *Was there sufficient evidence to find defendants guilty of possession and control of, and conspiracy to possess, heroin?*

Defendants contend that the record is devoid of evidence to support defendants' convictions of possession and control of heroin; that being in the

same room where heroin is found does not make all in the room possessors of the heroin, nor does it mean that all in the room have power to control it; and that the motions for directed verdict were, therefore, erroneously denied.

The people counter by asserting that the concepts of "possession" and "control" are to be construed in a broad rather than restricted, technical sense, citing *People* v. *Harper* (1962), 365 Mich 494; and that there was enough circumstantial evidence, if believed, to find that defendants possessed and controlled heroin.

In *People* v. *Harper, supra,* the Supreme Court had occasion to consider the statute dealing with illegal possession and control of narcotics,[1] and, in determining the meanings to be given to the words "possession" and "control", stated in part at pp 505–507:

"It is further significant that the acts forbidden are described in words without peculiar and restricted legal meanings. They are words used in daily speech, understood by laymen in whatever occupation, and not just by lawyers. Each of the following words has a common meaning not altered by its use in reference to narcotics: selling, manufacturing, producing, administering, dispensing, and prescribing. *That the legislature used the words 'possession' and 'control' also in their commonly understood sense, and not in a restricted, technical sense, is apparent from the language used to describe the other acts similarly forbidden.*

\*      \*      \*

"These considerations lead us to conclude that the possession of narcotics forbidden by the Michigan act is broad enough to include narcotics knowingly placed in the trunk of one's automobile as well as

---

[1] MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123).

narcotics held in one's hands. The control of narcotics forbidden by the act without qualifying language, is broad enough to include any right to direct disposition of narcotics exercisable by any person, whether or not the owner of the narcotics." (Emphasis supplied.)

See also, *People* v. *Napolitano* (1966), 2 Mich App 601; *People* v. *Eaves* (1966), 4 Mich App 457.

It is clear that, on the basis of *Harper, supra,* the people presented sufficient facts for the jury to find "possession" and "control" of heroin as proscribed by the statute, MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123). The people presented evidence tending to show among other things that, on several occasions, while the premises in question were under surveillance, defendants frequently arrived at the premises and remained there for short periods of time; that certain of the defendants left the premises in a manner which indicated to an officer on the scene, who testified that he had had experience in observing persons under the influence of heroin, that they were under such an influence; that when defendants, as well as others entered the premises, they often went through a procedure, as they did on the night of the raid, *i.e.,* they would knock on the door, look through a window fan, knock again, after which a blind was opened in a window, and closed again, and the door was then opened to them; that, on the night of the raid defendants were found in a small room in close proximity to heroin and narcotic paraphernalia; that one defendant, on the night of the arrests, had blood marks on his shirt and a raised black and blue mark and two red dots on his arm, and another had scars on the inner portion of both arms.

Defendants further contend that, in regard to the conspiracy count, the prosecution failed to show

facts and circumstances from which it could be fairly inferred that an agreement was in existence.

The people assert that the joint acts of possession and control of heroin by defendants is evidence of a conspiracy, citing 15A CJS, Conspiracy, § 93(1), *People* v. *Arnold* (1881), 46 Mich 268, and 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), Conspiracy, § 1226, p 1619; and that the factual circumstances leading up to the arrests in the instant case, as well as the arrests of defendants in joint possession and control, show that defendants knowingly participated in a conspiracy.

In 15A CJS, Conspiracy, § 93(1), at pp 908–915 it is stated:

"To establish sufficiently the existence of the conspiracy, proof of an express agreement is not necessary. Since a conspiracy is rarely susceptible of proof by direct evidence such evidence is not essential, and conspiracy may be proved by direct or indirect evidence, or by both.

"The conspiracy may be sufficiently shown by circumstantial evidence. In determining whether a conspiracy has been established, it is necessary to take into consideration all the facts and circumstances shown by the evidence, including the conduct of the parties. The circumstantial evidence and the conduct of the parties may consist of concert of action.

"Circumstantial evidence is sufficient to sustain a conviction if the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists."

See, also, *People* v. *Sobczak* (1955), 344 Mich 465; *People* v. *Newsome* (1966), 3 Mich App 541;[2] *People* v. *Rosen* (1969), 18 Mich App 457.

---

2 At pp 552, 553 it is stated in part:
" 'Establishing the existence of the agreement obviously involves

We hold that, in light of the evidence seized and other surrounding circumstances, there was more than mere conjecture as to the existence of a conspiracy. Proof of possession and control of heroin in the instant case was sufficient, under the circumstances of this case, to allow the jury to find that a conspiracy existed. Since sufficient evidence was presented to allow the case to go to the jury on the issue of conspiracy to possess heroin, the trial court did not commit error in refusing defendants' motions for directed verdicts. The evidence presented was sufficient, if believed by the jury, to sustain defendants' convictions on the count charging conspiracy.

Defendants Farenger, Davis, Bercheny and Chwalek raise the following issues, which we deal with in order:

C. *Was there competent evidence before the examining magistrate on which to base the finding that the crime of conspiracy to possess heroin had been committed?*

A finding of probable cause at a preliminary examination does not require that the guilt of a defendant be established beyond a reasonable doubt. *People* v. *Ray* (1966), 2 Mich App 623. The con-

---

difficult problems of proof, most of which have been solved by a lenient attitude towards the prosecution. Since the criminal combination is frequently an organization flexible in membership, it has been held unnecessary for the jury to find that the individual defendant was a party to the original agreement. If he joins the conspiracy later, he becomes equally liable with the original conspirators. Even with such an expanded view of participation, the difficulty of obtaining direct proof that defendant has been a party to the agreement is manifest. Persons agreeing to engage in criminal activities do not typically "go out upon the public highways and proclaim their purpose; their methods are devious, hidden, secret, and clandestine". Therefore, the courts have held that proof of a formal agreement is unnecessary to support a finding of guilt, and that *it is sufficient if the circumstances, acts, and conduct of the parties are such as to show an agreement in fact.* Such an agreement may be established by evidence that "the parties steadily pursue the same object, whether acting separately or together by common or different means, but ever leading to the same unlawful result". ' " (Emphasis supplied).

tention of the people that there was sufficient evidence to establish an unlawful agreement is supported by the testimony given at the preliminary examination. As the people point out, all of the defendants were found in one room on the night of August 2, 1968, with heroin and narcotic paraphernalia in their midst; several defendants appeared to be under intoxication caused by narcotics, no evidence of alcoholic beverage consumption appearing; there was evidence of heroin being used; and defendants prior to August 2, 1968, were seen entering and leaving the premises often.

This Court may not substitute its judgment for that of the magistrate unless there has been a clear abuse of discretion in his determination of probable cause. *People* v. *Dellabonda* (1933), 265 Mich 486; *People* v. *Davis* (1955), 343 Mich 348; *People* v. *Marklein* (1960), 358 Mich 471; *People* v. *O'Leary* (1967), 6 Mich App 115, 120. No such abuse has been shown. This Court is of the opinion that, upon a thorough review of the record of the proceedings had before the examining magistrate, the evidence was sufficient to uphold the magistrate's action in binding defendants over for trial in circuit court.

D. *Did the trial court commit reversible error in failing to afford defendants additional pretrial proceedings following an amendment to the information?*

Defendants contend that the amendment to the information charging possession and control in separate counts, was one of substance rather than form, in that the information, as amended, charged new and separate offenses; that the distinction between the consolidated charges of possession and control as specified in the information as originally filed and the charges as amended requires the ap-

proach and substance of the defense to change; and that, had the defendants been afforded a preliminary examination as to the new offenses of possession and control as separated in the amended information, it could have been argued strongly on a motion to quash that there had been no showing at the examination that the crime of possession had been committed by defendants.

The people counter by asserting, and correctly so, that the original information charged defendants with possession *and* control of heroin; that the fact that the information as originally filed contained two distinct crimes was clear; and that, under the circumstances of this case, there is no requirement of rearraignment and further examination where there is a mere change in the form of the indictment, citing *People* v. *Batten* (1967), 9 Mich App 195.

We rule that *Batten, supra,* is dispositive of the issue under consideration. In *Batten,* this Court stated in part at pp 201, 202:

"The amended information was in the usual form * * * . It has been held that an information is not defective for duplicity if distinct offenses are included within the offense charged.

\* \* \*

"Defendants also assert error in granting permission to amend the information prior to trial. It is sufficient to state that the court has discretion to permit such amendment of pleadings, CL 1948, § 767.76 (Stat Ann 1954 Rev § 28.1016), and that so long as the amendment is as to form, which was true here, there is no requirement of rearraignment and further examination. In *People* v. *O'Hara* (1936), 278 Mich 281, 301, the Court ruled:

" 'Failure to remand defendants for further examination or to rearraign them after the amendment was in no way prejudicial. The amendment was one of form rather than substance.' "

The amendment in the case at bar was one of form, and no error was committed as regards this issue.

E. *Did the court commit prejudicial error in denying a motion for a mistrial based on possible prejudice to the jury by out-of-court statements without first conducting a meaningful interrogation of the jury?*

During the trial of this case defense counsel made a motion for mistrial based upon information which had been brought to his attention concerning certain events which transpired regarding a case being handled by another circuit judge located on the same floor as the presiding judge in the case at hand. Counsel had learned from a juror in that case that the jury had been dismissed from hearing any further cases during the jury term after the jury brought back a verdict of not guilty in a conspiracy case. Discussions were alleged to have arisen concerning that experience. The court in the instant case asked the jury whether "anything occurred that you may have heard of during the past week regarding the circumstances of any other case in this building that would prejudice your verdict pertaining to this jury case in any way", whereupon the jury audibly indicated a negative response in unison. The jurors, upon request, did not raise their hands to indicate the existence of prejudice.

Defendants contend that the foregoing exchange with the jury was inadequate to determine possible prejudice on their part; and that a more thorough examination should have been conducted by the trial judge.

The people assert that defendants' argument is speculative, and that there is no evidence shown by defendants of actual prejudice on the part of the jury, citing *People* v. *Nick* (1960), 360 Mich 219.

We rule that the rights of defendants were adequately safeguarded through the court's questions to the jury and the jury's responses thereto. The judge presiding at the trial and observing the occurrences in the courtroom and elsewhere is in a better position to determine the probability of any conduct on the part of jurors prejudicial to the rights of the defendants than is an appellate court. The action taken by the trial court should not be disturbed on appeal unless it appears that the court's discretion has been improperly exercised. *People v. Nick, supra,* p 224. No error was committed by the trial court.

F. *Was it prejudicial error for the trial court to deny a defense motion to instruct the prosecutor not to question the defendants as to their past criminal records?*

After the people had rested, a written motion and brief in support thereof, not a part of the record on appeal, and apparently not filed by defense counsel, was made. It was for the purpose of obtaining a decision as to whether the court would allow impeachment by prior criminal records, including previous arrests of the individual defendants, were they to take the stand. On oral argument the assistant prosecuting attorney did not assert that it was proper for him to ask a defendant on cross-examination whether he had been arrested without being convicted. There is no indication that the prosecution would have asked the questions upon which defendants now base error by the trial judge in indicating how he would rule. The people cited *People* v. *Baker* (1967), 7 Mich App 7, and *People* v. *Finks* (1955), 343 Mich 304. These cases have to do with convictions. It is apparent to this Court that the prosecution did not intend to ask questions regarding arrests without subsequent convictions.

The court indicated that the prosecution could, for the purpose of impeaching the defendants' credibility as witnesses, inquire as to arrests and convictions. Defendants Farenger, Bercheny, Davis and Chwalek did not testify on their own behalf.

Defendants contend that the court's ruling was erroneous; that on the basis of *People v. Brocato* (1969), 17 Mich App 277, a defendant, testifying at his own trial, may not be asked if he has been arrested or charged with crime, where the arrest or charge has not resulted in conviction and where the only purpose of the question is to impeach defendant's credibility as a witness; and that, to allow questioning of defendants as to prior convictions, for the purpose of drawing into question the credibility of the witnesses, as provided in MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158), would have been prejudicial to defendants.

In addition to the fact that *Brocato, supra,* repudiating the holding in *People v. Hoffman* (1965), 1 Mich App 557, was decided subsequent to decision in the instant case, the trial court's ruling in *Brocato,* reviewed by this Court, concerning the propriety of questions as to previous arrests, involved questions which were actually posed to defendant while testifying in his own behalf. In the instant case, the trial court's indication of its possible ruling was made in advance of the defendants' taking the stand and in advance of the actual posing of questions to them as to previous arrests. Indeed, defendants did not take the stand and the questioning at issue did not arise. As is stated in 1 CJS, Actions, § 17, pp 1013–1015, 1017:

"As a general rule it is not within the function of a court to act upon and decide a moot question or speculative, theoretical, or abstract question or proposition, or a purely academic question, or to

give an advisory opinion on such a question or proposition; * * * .

"[I]n the absence of some exigency the court will not predetermine a question, dependent upon some contingency or uncertainty, that may arise in the future under a state of facts which may be different from those which exist or may with certainty be anticipated; that the court will not lay down rules or propositions as to possible or probable issues, for the guidance of litigants as to their future conduct or dealings, however convenient or desirable for either party the authoritative settlement of the mooted questions involved may be; * * * .

"As otherwise defined, a moot case is a case which seeks to get a judgment on a pretended controversy when in reality there is none, or to get a decision in advance about a right before it has been actually asserted or contested, * * * ."

See *Johnson* v. *City of Muskegon Heights* (1951), 330 Mich 631.

The question sought to be reviewed is, as it was in the trial court, moot, and not necessary of determination. We cannot be sure that the circuit judge after careful consideration would have ruled in the manner that he said he might rule if the questions had been asked.

Additional issues raised by defendant Curtis, which merit discussion, are restated and dealt with as follows:

G. *Did the trial court commit reversible error by permitting the prosecution to show acts of defendant Curtis occurring prior to August 2, 1968?*

Defendant Curtis contends that admission into evidence of his words and acts with respect to the conspiracy on dates prior to August 2, 1968, was improper, no conspiracy having been alleged as

existing at the time the acts complained of were performed.

We rule that the case at hand is governed by the Supreme Court's holding in *People* v. *McCrea* (1942), 303 Mich 213, wherein it was stated at p 249:

"McCrea's next contention is that he was denied due process of law because of errors and irregularities in the conduct of the trial. Under this contention he objects to the order in which the prosecution put in its proofs. * * * The order of proof was within the discretion of the trial court, and we find no abuse of such discretion. In *People* v. *Saunders* [1872], 25 Mich 119, 121, we said:

" 'There is no class of cases [conspiracy] in which it is more important that the circuit judge should have a large discretion as to the order in which evidence should be received; and this discretion cannot be reviewed on error except in clear cases of abuse.' "

The acts complained of were relevant to the establishment of the conspiracy charged. We find no abuse of discretion by the trial court in regard to this issue.

H. *Did the trial court commit reversible error in allowing an expert witness to describe to the jury the addictive quality of heroin over defendant's objection?*

Defendant claims that, he not having been charged with the use of a narcotic drug, the trial court committed error in allowing testimony by an expert witness as to addiction. Defendant objected to such testimony at the time it was offered, on the ground that it was prejudicial to defendant Curtis, and asserts on appeal that admission of the testimony could inflame the jurors and deprive Curtis of a fair trial.

We note that defendant cites no authority for the contention here advanced, nor do we agree with the proposition set forth by Curtis, under the circumstances of this case. The questioning of the witness as to addictive nature of heroin encompassed only a small portion of the testimony offered at the trial. Further, there was relevancy in the testimony to proofs submitted concerning alleged use of narcotics by certain of the defendants. "Use" may be considered on the question of possession and control of narcotics, two offenses with which defendant was charged. See *People* v. *Napolitano* (1966), 2 Mich App 601. A thorough review of the testimony to which objection was made convinces us that there was no prejudicial error committed by the trial court in admitting such testimony.

Defendant Iaconis raises several issues, one of which merits consideration and is dealt with herein:

I. *The trial court dismissed the jury without the consent of defendant Iaconis after all the evidence was in, and his subsequent motion for dismissal on the ground that he had been formerly placed in jeopardy for the same offense was denied by the court. Was this reversible error?*

On December 19, 1968, after the taking of testimony upon the first trial of this case, counsel for one of the defendants moved for a mistrial based upon the alleged duplicitous count contained in the original information. Counsel for each of the defendants, with the exception of defendant Iaconis, joined in the motion. Mr. James Thompson, counsel for Iaconis, was not in court that day and, pursuant to prior arrangement between court and counsel, Mr. John Kadela, counsel for a defendant who is not a party to this appeal, agreed to sit in for Mr. Thompson. The following occurred on that date after the motion for mistrial had been made:

"*Mr. Kaplan:* I would like to concur, your Honor, on the motion for a mistrial.

"*Mr. Kadela:* I also would do that, your Honor. And, we have a practical problem here. As you know, I graciously agreed to sit in for Mr. Thompson. However, I do not believe that I can make this determination for him.

"*The Court:* That is a fair statement.

"*Mr. Muhlitner:* I too concur.

"*Mr. Kadela:* But I join in the motion.[3]

"*The Court:* I can make a fair inference that Mr. Thompson would join."

The court thereupon declared a mistrial as to all defendants, pursuant to MCLA § 767.76 (Stat Ann 1954 Rev § 28.1016), which states in part:

"The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall *on his motion* be entitled to a discharge of the jury, * * * . In case a jury shall be discharged from further consideration of a case under this section, the accused shall not be deemed to have been in jeopardy." (Emphasis supplied.)

After the amended informations had been filed, and shortly after commencement of the second trial, counsel for defendant Iaconis filed a motion to quash the new information and warrant, filed as to Iaconis, on several grounds, *inter alia,* that the discharge of the jury constituted former or double jeopardy. The court denied this motion, and stated in part:

---

[3] Mr. Kadela was speaking for his own client, Ronald Lee Baldridge, and not speaking on behalf of Mr. Thompson's client, Mr. Iaconis.

" * * * as to the date the continuance was made by the court, Mr. Kadela was sitting in for Mr. Thompson with the consent of Mr. Thompson's client. At that time the issue was raised with respect to duplicity of the charge under Count I. I believe that the record made that day is binding on Mr. Thompson and binding upon Mr. Thompson's client."

Defendant Iaconis contends that, pursuant to MCLA § 767.76 (Stat Ann 1954 Rev § 28.1016), if an accused feels that he has been prejudiced by an amendment to an information, *he may move* for a discharge of the jury and for a continuance; but that if the accused is satisfied to proceed with the trial after, and in the face of, the amendment, the court has no prerogative to discharge the jury, and the provision of the statute that the accused "shall not be deemed to have been in jeopardy" cannot operate. Defendant further maintains that he, unlike his co-defendants, did not complain of the information as originally filed and did not move for, nor consent to, a mistrial; and that he must, therefore, be deemed to have been in jeopardy prior to the second trial which commenced January 2, 1969, since the jury which had been sworn on December 3, 1968 was erroneously discharged as to him.

That a verdict need not be returned in order for jeopardy to attach was pointed out by the Court in *People* v. *Schepps* (1925), 231 Mich 260, 265, 268:

" * * * It may be conceded as a generally recognized rule of bench law when unmodified by constitutional or statutory provision, that jeopardy attaches as soon as a jury is called and sworn for the trial of an accused under a valid indictment or information for a felony.

* * *

"Under the rule which now obtains in this jurisdiction the accused is *prima facie* in jeopardy when his trial has been entered upon and progressed through selection and swearing a jury, the court then being fully organized for and committed to his trial. The court cannot thereafter through caprice or because of some irritating incident of the trial discharge the jury and call it a mistrial, without raising a bar to subsequent trial for the same offense (*People* v. *Brosky* [1923], 222 Mich 651). While that limited and conditional power to discharge the jury is recognized as reserved to the court for those rare cases where a manifest necessity arises or facts are discovered showing in the opinion of the court that the ends of public justice would otherwise be defeated, it should when not consented to by the defense be given careful consideration and only exercised when conditions in the nature of an emergency have risen satisfying the court that manifest necessity or the ends of justice make it imperative."

See, also, *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199).

In *People* v. *Gardner* (1886), 62 Mich 307, it was stated at p 311:

"After a jury has been impaneled and sworn, any discharge thereof without sufficient cause operates as an acquittal, in that it effectually bars another trial for the same offense. But to have this operation and effect such discharge must have been made without the consent, express or implied, of the respondent."

In *People* v. *Parker* (1906), 145 Mich 488, the following was stated at pp 500, 501:

"Appellate courts will not interfere with the action of trial courts in discharging juries, where facts are found upon which such action can be based.

But the facts must be found and placed upon the record. *State* v. *Wiseman,* 68 NC 203.  *  *  * Under the facts of this case, both the accused and the people were entitled to have the case submitted to the jury. The accused was in legal jeopardy. No overruling necessity for the discharge of the jury had arisen. It follows that the conviction must be reversed, and the prisoner discharged.

"While it is unfortunate that the respondent shall escape punishment for his crime, it is essential, for the public safety, and for the protection of accused persons, to preserve those forms of procedure provided by the Constitution and the laws, and guaranteed to every citizen."

We agree with the defendant's contention that a waiver of the important right to be tried by a jury first impaneled should not be assumed, but should clearly appear on the record. In the case at hand the record reveals only that counsel for defendant Iaconis did not join in the motion for mistrial. We rule that, on the basis of the foregoing authority, defendant Iaconis' motion for dismissal because of former jeopardy should have been granted by the trial court, and that its failure to do so constituted reversible error.

The other questions raised by defendants do not merit consideration.

Affirmed as to defendants Davis, Farenger, Bercheny, Chwalek, and Curtis. As to defendant Iaconis, reversed and discharged.

All concurred.