PEOPLE *v.* SHUGAR

1. VENUE—CHANGE OF VENUE—DISCRETION.

Granting a motion for a change of venue is within the discretion of the trial court; a denial of a motion will not be overturned on appeal unless there is a definite clear showing of abuse.

2. VENUE—CHANGE OF VENUE—CRIMINAL LAW—DISCRETION.

Denying a motion for a change of venue from the Recorder's Court of Detroit where the defendant contended that he could not get a fair trial because the homicide for which he was tried took place on the second day of the Detroit riot of 1966, the victim was black and the defendant was white, the homicide received extensive coverage in the book, *Algiers Motel Incident,* local newspapers, and the *Kerner Report* attributed the Detroit riot to "white racism", was not an abuse of discretion where the defendant had an all-white jury, never exhausted his peremptory challenges, expressed satisfaction with the jury, and the trial began over 17 months after the homicide occurred.

REFERENCES FOR POINTS IN HEADNOTES
[1]  56 Am Jur, Venue § 74.
[2]  56 Am Jur, Venue § 56.
[3, 6]  58 Am Jur, Witnesses §§ 621, 676.
[4]  58 Am Jur, Witnesses § 754 *et seq.*
[5]  58 Am Jur, Witnesses § 687 *et seq.*
[7]  58 Am Jur, Witnesses § 767 *et seq.*
[8]  40 Am Jur 2d, Homicide § 10.
[9]  40 Am Jur 2d, Homicide § 52.

3. TRIAL—CROSS-EXAMINATION—SCOPE—DISCRETION.

The scope of cross-examination for impeachment purposes its within the discretion of the court.

4. WITNESSES—IMPEACHMENT—PRIOR ARRESTS.

Refusing to allow defense counsel to inquire into a prosecution witness's prior arrest record for the purpose of impeachment was not an abuse of discretion where the arrests did not result in convictions.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO REMAIN SILENT.

The defendant's constitutional right to remain silent was not infringed upon by the prosecutor's asking the defendant why he failed to turn himself in to the police immediately after the shooting for which he was being tried and why, after turning himself in, he failed to give the police a statement that he acted in self-defense, where defendant failed to object to the questions at the time they were asked and he had testified on direct examination that he exercised his right to remain silent upon the advice of counsel.

6. CRIMINAL LAW—EVIDENCE—CROSS-EXAMINATION—DISCRETION.

Refusal to allow defendant to ask a prosecution witness what part of a defense witness's testimony which conflicted with the prosecution witness's testimony was true was not an abuse of discretion where the prosecution witness had already refuted all of the defense witness's testimony.

7. CRIMINAL LAW—EVIDENCE—PRIOR INCONSISTENT STATEMENT—ADMISSION.

Refusal to allow a prosecution witness's prior inconsistent statement to be admitted into evidence as an exhibit was not error where the prior inconsistent statement was read to the jury and the witness admitted having made the statement.

8. HOMICIDE—MURDER—STATE OF MIND—PRIOR IMMEDIATE CONDUCT.

Testimony concerning the defendant's conduct immediately before a homicide was properly admitted into evidence in his trial for murder because such testimony was relevant in determining the state of mind in which the defendant committed the homicide.

9. HOMICIDE—MURDER—PREMEDITATION—PROOF.

Premeditation by the defendant in his shooting of the victim could have properly been inferred where there was testimony, which if believed, established that the defendant twice told

the deceased that he was going to kill him and that the defendant was prompted to leave the scene of the slaying but refused to leave.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 April 14, 1970, at Detroit. (Docket No. 7842.) Decided December 10, 1970.

Richard Paul Shugar was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Charles T. Burke,* for defendant on appeal.

Before: T. M. BURNS, P. J., and LEVIN and DAVIDSON,* JJ.

T. M. BURNS, P. J. Defendant, Richard Paul Shugar, was convicted by a jury of murder in the second degree.[1] When defendant's motion for a new trial was denied, he brought this appeal raising several claims of reversible error.

Defendant's first contention is that the trial court erred in denying his motion for a change of venue. On July 19, 1968, defendant filed a written pre-trial motion for a change of venue and a continuance until after January 1969. The motion was denied on July 29, 1968. Defendant challenges on appeal only

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).

the trial court's denial of the motion for change of venue because the continuance almost became a reality since the trial, due to several delays, did not begin until January 15, 1969.

The basis for defendant's argument is the fact that the homicide took place on the second day of the Detroit riot and that the victim was black and the defendant is white. Defendant contends that because of these facts the incident received extensive coverage in the Detroit newspapers and mention in the *Algiers Motel Incident,* a book by John Hersey.[2] Defendant contends that the extensive publicity, when added to the publication of the *Kerner Report,* which attributed the Detroit riot to "white racism", made it impossible for him to receive a fair trial in the City of Detroit.

The granting of a motion for change of venue is in the discretion of the trial court. *People* v. *Swift* (1912), 172 Mich 473. To overturn the trial judge's decision, there must be a definite, clear showing of the abuse of that discretion. *People* v. *Jenkins* (1968), 10 Mich App 257, 262.

An examination of the trial record shows that defendant had an all-white jury. A thorough *voir dire* examination was conducted by counsel. Defendant never exhausted his peremptory challenges and expressed himself satisfied with the impanelled jury. The trial did not begin until over 17 months after the homicide occurred. All of these facts clearly indicate that the defendant was not prejudiced by the trial court's denial of his motion for change of venue. Defendant makes no showing of an abuse of discretion by the trial court.

The defendant's second assignment of error involves the cross-examination of a prosecution wit-

---

[2] A careful reading of that book by this writer failed to find any mention of this particular incident.

ness. Anthony Edmonds, a brother of the victim, gave highly incriminating testimony against the defendant. In an attempt to impeach his credibility on cross-examination, defense counsel questioned the witness about his prior arrest record even though none of the arrests had resulted in a conviction. The trial court sustained the people's objection to this line of questioning and permitted no further questions regarding the witness's arrest record. It is defendant's position that the credibility of any witness may be tested by reference to the witness's arrest record whether or not the arrest resulted in a conviction.

The scope of the cross-examination when an attempt is made to impeach a witness is within the sound discretion of the trial court. *People* v. *Mac-Cullough* (1937), 281 Mich 15; *People* v. *Kruper* (1954), 340 Mich 114. We certainly cannot say that it is an abuse of discretion by the trial court to prohibit an inquiry into a witness's arrest record for impeachment purposes, especially when the arrests did not result in a conviction. We find no abuse of discretion by the trial court.

Defendant's third assignment of error is that it was a denial of defendant's Fifth Amendment[3] right to remain silent for the court to allow the prosecution to ask the defendant why he did not turn himself in to the police immediately after the shooting and why, when he finally did turn himself in, he didn't give them a statement to the effect that he had acted in self-defense.

The questions and answers now objected to are as follows:

"*Q.* Why didn't you go right to the police and tell them that you had just shot somebody in self-defense?

---

3 US Const, Am 5.

"*A.* I don't know why. I was advised on it before I did anything. I knew I had done wrong. I realized that I had done wrong. I had did a terrible thing. But I had no intentions on shooting this man.

\* \* \*

"*Q.* When you did turn yourself in to the police, they did advise you of your constitutional rights; is that right?

"*A.* Correct.

"*Q.* Did you have your lawyer with you at that time? ·

"*A.* Yes, I did.

\* \* \*

"*Q.* And you made no statement to the police of self-defense or anything else at that point?

"*A.* Not that I can recall, no.

"*Q.* Now, Mr. Shugar, if you had made a statement, would you be able to recall?

"*A.* I'm not sure. I'm not sure. I don't believe I did, but I'm not positive. That was one hectic day, Mr. Koscinski. I don't recall giving them a statement. I remember talking to them. Exactly what I told them or said I don't remember. I didn't sign anything."

Defendant now claims that the above questions were asked for the purpose of getting the jury to infer that because defendant did not give a statement to the police and because he contacted a lawyer he must have been guilty of something. This, claims defendant, is a violation of his constitutional right to remain silent.[4]

Defendant relies on *People* v. *Seales* (1969), 16 Mich App 572, as authority for the proposition that the above line of questioning constitutes reversible error. In *Seales,* the defendant, on direct examination, testified that during confinement at the police station his friend, Alvin Taylor, told him that he had

---

[4] US Const, Am 5.

thrown away a package containing marijuana which was retrieved by the police. The prosecutor, then, on cross-examination, asked the defendant if he had advised the police of what Taylor had told him. Defense counsel promptly moved for a mistrial on the ground that this violated the defendant's privilege against self-incrimination. The objection was overruled.

Seales' counsel again objected when the prosecution, during jury argument, stated that the normal thing would have been for defendant to advise the police officer of what he had learned from his friend while they were in the cell together, rather than waiting four or five months to come up with the story. The prosecution concluded by saying that these are all things to be taken into consideration. Defendant's objection was again overruled. We held that these remarks constituted prejudicial comment upon Seales' exercise of his constitutional right to remain silent in the face of accusation or interrogation.

In the case at bar, in contrast with *Seales,* defendant made no objection to the questions at the time they were asked by the prosecution. Moreover, before the now objected-to questions were asked, the defendant's lawyer brought out on direct-examination of the defendant that he had exercised his constitutional right to remain silent based upon the advice of counsel. Having explained this to the jury himself, he cannot properly say that the additional questioning by the people prejudiced him. We find no injustice to the defendant caused by the unobjected-to examination and, therefore, find no merit in defendant's third assignment of error.

Defendant's fourth assignment of error concerns the trial court's restriction on defense counsel's cross-examination of a prosecution witness. At the trial, it was the theory of the defendant that he had

acted in self-defense. To support that contention, defendant called Mr. Joseph Binkowski to the stand to testify that he had accompanied defendant to the scene and that defendant shot the victim after the victim had threatened the defendant and reached his hand into his pocket.

It was the theory of the people, however, that Mr. Binkowski was not at the scene of the slaying, but that he had agreed to commit perjury for the defendant. To support its theory, the prosecution recalled Anthony Edmonds to the stand to testify that Mr. Binkowski was not with the defendant at the time in question. The pertinent part of defense counsel's cross-examination of Edmonds is as follows:

"*Q.* You heard the testimony of Mr. Binkowski from the stand, did you not?

"*A.* Yes.

"*Q.* And it's your testimony that this man was never present in this vicinity, is that correct?

"*A.* Yes, it is.

"*Q.* Are you saying then, Mr. Edmonds, that everything Mr. Binkowski says is a lie?

"*A.* Well, it is—to certain aspects in the case, it's true, but quite a bit of it is.

"*Q.* Are you saying certain things he said are true and certain things he said are a lie?

"*A.* Yes.

"*Q.* Then you are not calling him a liar completely and totally?

"*A.* Correct.

"*Q.* Which parts are you saying are true?

"*Mr. Koscinski:* I object to that, your Honor. It's a highly irregular way of questioning this man. He testified he wasn't there.

"*The Court:* He testified he wasn't there.

"*Mr. Koscinski:* Mr. Binkowski may have very well simulated some of the things that went on there.

*"Mr. Crehan:*  Let's don't have editorializing by counsel.

*"The Court:*  All right, the objection is sustained. He denies he was there, which would be denying Mr. Binkowski's entire story.

*"Mr. Crehan:*  Am I prevented from asking him and going into details on Mr. Binkowski's particular details on the stand?

*"The Court:*  You are.  He has denied Mr. Binkowski was there and has any personal knowledge about the thing.  That is his statement.

*"Mr. Crehan:*  I understand.  I have no further questions."

Defendant admits that the extent of cross-examination of a witness is within the discretion of the trial court.  *People* v. *Layman* (1941), 299 Mich 141; *People* v. *Watson* (1943), 307 Mich 596; *People* v. *Fedderson* (1950), 327 Mich 213.  Defendant contends, however, that here the court abused its discretion in not allowing further questioning since the testimony was conflicting.

As the trial judge in his opinion observed, the answer to the question was irrelevant since Edmonds had already stated that Binkowski was not at the scene with the defendant.  Edmonds had, therefore, refuted all of Binkowski's testimony as to what he had observed at the scene.  The trial judge allowed the jury to decide whom to believe.  He did not abuse his discretion in limiting the cross-examination.

The defendant next contends that it was error for the trial court not to admit into evidence as an exhibit a written statement by another prosecution witness, John Umlah.  Mr. Umlah, in support of the people's contention that Binkowski was not at the scene, testified at trial that the person with defend-

ant at the scene had light hair. Mr. Binkowski has dark hair. Mr. Umlah had, however, in a statement given to the police prior to the trial, described defendant's companion as having dark hair. This prior inconsistent statement was read to the jury and Mr. Umlah had admitted making the statement. It is difficult to see how defendant was prejudiced by the refusal of the trial court to admit the statement as an exhibit. The jury heard the statement and the witness admitted he had made it. It was not error for the trial court to refuse to admit the statement as an exhibit.

Defendant next argues that it was reversible error for the trial court to permit two witnesses to testify to defendant's conduct just prior to the shooting. Both witnesses described defendant's taking the gun out of the trunk of the car and harassing some children in the neighborhood. This testimony, defendant argues, was not connected with the slaying and was highly prejudicial.

The testimony of the two witnesses concerned defendant's conduct immediately prior to the shooting. The testimony was, therefore, relevant in determining the state of mind with which the defendant committed the shooting. *People* v. *Potter* (1858), 5 Mich 1; *Maher* v. *People* (1862), 10 Mich 212; *People* v. *Palmer* (1895), 105 Mich 568; *People* v. *Kayne* (1934), 268 Mich 186.

Intent may be logically inferred from the circumstances surrounding the killing:

"Furthermore, intent is an element of the crime to be proved. State of mind may be established by circumstantial evidence. The theory here is that the circumstances may show a probable desire to injure, and thus the probability of intentionally causing the injury. Evidence which has any bearing on intent

or motive is admissible so long as it is within safe bounds of relevance."[5]

The testimony was, therefore, properly admitted by the trial court.

Defendant's last contention is that the trial court erred in refusing to reduce the charge of first-degree murder to either second-degree murder or manslaughter. At the close of the people's proofs, the defendant moved to have the charge so reduced, contending that the prosecution had failed to establish premeditation. The trial court denied the motion.

Premeditation and deliberation, being a product of the mind and wholly subjective without a confession or admission, were incapable of direct proof. However, there was testimony which, if believed, established that defendant told the deceased twice that he was going to kill him. Defendant was prompted to leave the scene and he refused. Premeditation could have been inferred from the circumstances surrounding the slaying.

We find no merit in any of the defendant's assignments of error.

Affirmed.

All concurred.

---

[5] *People* v. *Jones* (1940), 293 Mich 409, 415.