PEOPLE v RANES

1. CRIMINAL LAW—EVIDENCE—SUPPRESSION OF EVIDENCE—PERJURY— FLIGHT—JURIES.

Evidence that a defendant has attempted to suppress testimony or induce perjury or that he fled to avoid lawful arrest or attempted to destroy evidence may be considered by a jury as evidence of guilt.

2. EVIDENCE—POLYGRAPH TESTS—LIE-DETECTOR TESTS—UNSOLICITED REFERENCE—WITNESSES—INSTRUCTIONS TO JURY—ERROR.

The results of polygraph tests are not admissible in evidence, but unsolicited reference to a polygraph by a witness which made no mention of the results and which was followed by a complete cautionary instruction was not reversible error.

3. VENUE—MOTIONS—BURDEN OF PROOF—JUROR INFLUENCE—COURT'S DISCRETION—ABUSE—APPEAL AND ERROR.

A party presenting a motion for change of venue bears the burden of proving juror influence, and a showing that some jurors may have read or heard of the case through the news media is not sufficient; the granting or denial of the motion is discretionary with the trial court, and the exercise of that discretion will not be disturbed on appeal unless clearly abused.

4. HOMICIDE—MURDER—INCLUDED OFFENSES—INSTRUCTIONS TO JURY —ASSAULT—HARMLESS ERROR.

Instructions to the jury, in a trial for first-degree murder, that

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 276 *et seq.*

[2] 29 Am Jur 2d, Evidence § 831.

Physiological or psychological truth and deception tests. 23 ALR2d 1306.

[3] 77 Am Jur 2d, Venue §§ 82–85.

Construction and effect of statutory provision for change of venue for the promotion of the convenience of witnesses and the ends of justice. 74 ALR2d 16.

[4] 40 Am Jur 2d, Homicide § 507.

[5] 29 Am Jur 2d, Evidence §§ 784–788.

Use of photograph, plan, map, cast, model etc., as evidence as affected by marking or legends thereon. 108 ALR 1415.

they could find the defendant guilty of first-degree murder, second-degree murder, or manslaughter if they found the defendant aided or abetted in the killing and not guilty if he did not, were proper and any error which may have resulted from the court's refusal to include instructions on crimes of assault was harmless beyond a reasonable doubt in a situation where the defendant contended the crime occurred in his absence because if the jury had so believed they would have been obliged to return a verdict of not guilty.

5. HOMICIDE—MURDER—EVIDENCE—PHOTOGRAPHS—JUDGES—DISCRETION—APPEAL AND ERROR.

The admission into evidence of photographs of the body of a murder victim and the area in which it was found is discretionary with the trial court and in exercising that discretion the judge must weigh the probative value of the evidence against its potential prejudicial effect; in reviewing the determination of the trial court the Court of Appeals has the right to make its own evaluation of the inflammatory nature of the photographs as balanced against materiality and prejudice.

Appeal from Kalamazoo, Lucien F. Sweet, J. Submitted January 6, 1975, at Grand Rapids. (Docket No. 18210.) Decided August 25, 1975.

Danny Ranes was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Stephen M. Wheeler,* Chief of Appellate Division, for the people.

*Thomas M. Powers,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Defendant was convicted by a jury of first degree murder. MCLA 750.316; MSA 28.548. Thereafter, defendant was sentenced

to life imprisonment in solitary confinement at hard labor. He now appeals as of right.

Crucial to defendant's conviction was the testimony of witnesses Brent Koster, who testified that he and defendant acting together raped and murdered the deceased, Pamela Fearnow; Lee Keaton, a county jail inmate who testified that defendant, while also in jail, asked Keaton if he knew of anyone that could take a contract to kill Koster because he, the defendant, would have a lot better chance of beating the rap if Koster was out of the way; and one Richard Fee, who testified that defendant attempted to get him to appear as a witness for the defense and further attempted to convince Fee to say that Koster had been lying about defendant's involvement because of a deal made with the prosecution.

Initially, defendant contends that the testimonies of Keaton and Fee relating to evidence which occurred subsequent to the crime were improperly admitted into evidence, resulting in reversible error. We disagree. This issue is controlled by *People v Hooper*, 50 Mich App 186, 199; 212 NW2d 786 (1973), *lv den* 391 Mich 808 (1974). The following quote from *People v Hooper, supra,* illustrates the rule:

"Michigan has long followed this rule and held that evidence that a defendant has attempted to suppress testimony or induce perjury is admissible. *People v Salsbury,* 134 Mich 537; 96 NW 936 (1903), *People v Adams,* 162 Mich 371; 127 NW 354 (1910), *People v Randall,* 294 Mich 478; 293 NW 725 (1940). This Court recently reaffirmed this long-standing rule in *People v Casper,* 25 Mich App 1, 7; 180 NW2d 906, 909 (1970), wherein the rule was stated as follows:

" 'Michigan authority appears uniform in holding that actions by the defendant such as flight to avoid lawful arrest, procuring perjured testimony and at-

tempts to destroy evidence, while possibly as consistent with innocence as with guilt, may be considered by the jury as evidence of guilt.'

"Thus, in the instant case there was no error in allowing this testimony since it was proper evidence for the jury to consider."

Defendant by attempting to procure a contract on Koster attempted to suppress his testimony. Further, by attempting to get Fee, a witness, to lie defendant was attempting to induce perjury. Under *People v Hooper, supra,* the testimony of both Keaton and Fee was proper evidence for the jury's consideration.

Next defendant contends that the following colloquy between the prosecutor and the witness Fee constitutes reversible error:

"*Q:* Have you lied to keep from getting into trouble in the past?
"*A:* Yes.
"*Q:* Are you telling the truth now, Rich?
"*A:* Yes.
"*Q:* How do we know that?
"*A:* I took a lie detector test—"

Immediately following the foregoing colloquy the court stated:

"Members of the jury, what the witness just said about having taken a lie detector test, you should disregard entirely."

The court further proceeded to explain the unreliability of lie-detector tests and again cautioned the jury to put it out of their minds because it had no evidentiary value. Defendant moved for a mistrial which motion was denied and now claims

that the court committed reversible error in denying said motion.

It is a long-standing rule in Michigan jurisprudence that the results of polygraph tests are not admissible in evidence. *People v Frechette,* 380 Mich 64, 68; 155 NW2d 830 (1968). This includes polygraph tests given both the defendant and any witnesses. *People v Goodwin,* 40 Mich App 709; 199 NW2d 552 (1972).

We are of the opinion however that reversible error does not exist where the polygraph reference is unsolicited, no mention is made of its results, and where the court gives a complete cautioning instruction. In *People v Davis,* 53 Mich App 94, 96; 218 NW2d 787, *cert den,* 419 US 1080; 95 S Ct 670; 42 L Ed 2d 674 (1974), the Court held:

> "We find no merit in defendant's argument that reversible error was committed at trial when reference was made to defendant's taking a polygraph examination and when the trial court denied defendant's subsequent motion for a mistrial. The reference to the polygraph examination was made by defendant as a nonresponsive answer to a question posed by the prosecutor. The trial court immediately after defendant's answer was given, instructed the jury to disregard any mention of the polygraph and in its final instructions specifically instructed the jury to disregard 'any and all references made to the term "polygraph" or "polygraph administration" '. No grounds for mistrial were present, and we find no reversible error. *People v Tyrer,* 19 Mich App 48, 51; 172 NW2d 53 (1969), *appeal dismissed,* 385 Mich 484 (1971), *People v Paffhousen,* 20 Mich App 346, 351; 174 NW2d 69 (1969), *leave to appeal denied,* 383 Mich 825 (1970)."

In the instant case the court immediately ordered the testimony stricken and gave complete cautionary instructions. In addition the court ex-

plained to the jury the unreliability of lie-detector tests. The reference here to the witness having taken a lie-detector test was isolated and never mentioned again throughout the course of the trial. The reference by Fee to having taken the test was brief and we cannot say it was intentional, advertent or solicited. Nor can we say that the prosecutor was seeking the answer he received. Occasionally an unsophisticated witness may, inadvertently, make reference to improper information in the hearing of the jury. Under the circumstances here, however, and especially in view of the fact that the polygraph reference was unsolicited, no mention was made of its results, the court immediately instructed the jury to disregard the testimony, proceeded to explain the unreliability of such tests, and cautioned the jury to remove it from their minds because it had no evidentiary value, no error existed. Defendant's motion for mistrial was properly denied.

Defendant also contends that the trial court committed reversible error in denying two pretrial motions for change of venue. We do not agree. While either party may be granted a change of venue "upon good cause shown", MCLA 762.7; MSA 28.850, the denial of such motion rests in the trial court's discretion. To set aside such a decision, a clear showing of abuse on the part of the trial court must be demonstrated. *People v Kochan,* 55 Mich App 326; 222 NW2d 317 (1974), *People v Shugar,* 29 Mich App 139; 185 NW2d 178 (1970), *People v Ranes,* 58 Mich App 268; 227 NW2d 312 (1975).

A showing that some jurors may have read or heard of the case through the news media is not sufficient. The party seeking the change must show juror influence and the burden of showing

such influence is on the challenger. *People v Moore,* 51 Mich App 48, 52; 214 NW2d 548 (1974). The record on appeal does not indicate that the jurors selected would be unable to render an impartial verdict. *People v Stockard,* 48 Mich App 680; 211 NW2d 62, *aff'd* 391 Mich 481; 219 NW2d 68 (1974). Defendant has therefore failed to meet his burden of showing undue influence or pre-conceived opinion in this case. Hence, no abuse of discretion exists.

Further, following commencement of trial, the following colloquy occurred between the court and defense counsel:

"*The Court:* Am I correct, Mr. Contos, that you have exhausted your peremptories.

"*Mr. Contos:* I have, your Honor.

"*The Court:* Alright swear the jury. Let me say for the record that I am satisfied that none of the jurors now in the box entertain such a present opinion as to influence the verdict of any such jurors, and you may swear the jurors in the box."

There was no comment or objection to the trial judge's observations and ruling. Counsel's conduct created an inference of satisfaction with the jury which militates against his argument of jury bias. *People v Stockard, supra, People v Collins,* 43 Mich App 259, 263; 204 NW2d 290 (1972), *lv den,* 391 Mich 798 (1974), *People v Greene,* 42 Mich App 154, 155; 201 NW2d 664 (1972), *lv den,* 388 Mich 782 (1972), *People v Harrell,* 54 Mich App 554; 221 NW2d 411 (1974). We therefore conclude that the trial court did not err in denying defendant's motions for change of venue.

Defendant further contends the trial court erred in refusing to give the following instruction regarding alternative verdicts:

"Lesser included offenses are second-degree murder, manslaughter, assault with intent to commit murder, assault with intent to do great bodily harm less than the crime of murder, felonious assault, assault with intent to commit any felony not otherwise punished, assault and infliction of serious injury, assault and battery, and simple assault."

Defense counsel objected to the court's failure to give the requested instruction. Instead, the trial court gave the jury the choice of four verdicts: first-degree murder, second-degree murder, manslaughter and not guilty. The court's instruction as to alternative verdicts reads as follows:

"Consequently, if you find beyond all reasonable doubt that Danny Ranes was concerned in the commission of the killing of Pamela Fearnow at the place and at the time charged, or that he aided or abetted another, to-wit: Brent Koster, in killing of Pamela Fearnow, by word or deed, either by words of encouragement, sustenance, or support, or by actions giving encouragement, sustenance, or support, he would be equally responsible for such killing with the person who actually did the act that caused the death of Pamela Fearnow, and you should then determine whether murder is in the first degree, murder in the second degree, or manslaughter was committed by the defendant."

The evidence upon which defendant claims he was entitled to his requested instruction appears in the following testimony of Richard Fee while being examined by the prosecuting attorney:

"*Q:* Did the defendant tell you anything about the crime itself?

"*A:* Yes, he did.

"*Q:* Do you know why he told you about that?

"*A:* I believe he was trying to convince me he didn't have anything to do with it.

"*Q:* So that you would lie for him?

"*A:* Yes.

"*Q:* What did he tell you?

"*A:* He told me that he picked the Fearnow girl up hitchhiking.

"*Q:* He admitted he had picked her up hitchhiking?

"*A:* Yes, and she wanted to go to the West Main Mall. He then told me he drove to the West Main Mall, and Brent and the girl wanted to go to the lake, so Danny drove them out to the lake, and when he got to the lake Brent asked Danny if he would go down to the store and get some beer, so Danny went down to the store. When he got back with the wine he asked Brent where the girl was, and he said Brent told him he had killed her."

Here the jury was given the option of finding first-degree murder, second-degree murder, or manslaughter if they found defendant aided or abetted in the killing, and not guilty if he did not. The jury verdict reflects they believed Koster did not kill the girl on his own, without aid or assistance from the defendant, and that defendant participated. Hence, we conclude the trial court's instructions were sufficient and error, if any, resulting from the court's refusal to give defendant's requested instruction would, under the circumstances, be harmless beyond a reasonable doubt; for if the jury believed that the offense occurred during defendant's absence they would be obliged to return a verdict of not guilty. Error therefore, if any, inured to the benefit of the defendant who cannot now complain on appeal.

Lastly, defendant contends that the trial court committed error in denying defendant's motion for a mistrial where a police officer characterized a photograph of the deceased, as that of a partially eaten skeleton and further that the court erred by admitting into evidence certain photographs of the

area in which the deceased was found together with other photographs depicting decedent's body which photographs were taken in said area.

The testimony to which the defendant objected was that of Sheriff Robert Van Streain:

"*Q:* Did the body appear to be intact?
"*A:* Yes, sir, with the exception of a foot.
"*Q:* Where was that?
"*A:* Apparently the animals had gotten to it."

Defendant moved for a mistrial on the grounds that this testimony had no probative value, was inflammatory and denied defendant a fair trial. The court offered to give a cautionary instruction to which defense counsel agreed while at the same time observing that it did not erase the prejudice. In this regard the court instructed the jury as follows:

"Members of the jury, Sergeant Van Streain, when he was describing the body that was found, as he testified to, gave his conclusion that a foot was missing, that the ants had gotten to it. That statement by him was a conclusion. It is stricken, and you should disregard it."

We conclude that the above statements of the witness Van Streain were not prejudicial and that the court's instruction eliminated and removed any possible inference of prejudice.

With respect to the admission of the photographs into evidence this is a matter which is in the sound discretion of the trial court. In exercising that discretion a trial judge must weigh the probative value of such photographic evidence against the potential prejudicial effect. *People v Musser,* 53 Mich App 683, 691, 692; 219 NW2d 781

(1974), *lv den,* 392 Mich 798 (1974), *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972).

This Court has the right to make its own evaluation of whether the pictures are excessively gruesome or inflammatory as balanced against materiality and prejudice. *People v Falkner,* 389 Mich 682, 209 NW2d 193 (1973), *People v Banks,* 50 Mich App 622, 628; 213 NW2d 817 (1973). We conclude that the pictures were relevant, material and had probative value outweighing any possible prejudicial effect since they illustrated and confirmed the testimony of the people's witness Brent Koster, as to the method, fact, time and place of the murder. Koster's testimony was crucial to defendant's conviction. His credibility was an issue and the photographs when considered in conjunction with his testimony confirmed his credibility.

We find no error.

Affirmed.