PEOPLE v THOMAS

Docket No. 77-5025. Submitted June 14, 1978, at Grand Rapids.—
Decided November 6, 1978. Leave to appeal applied for.

Bennie L. Thomas was convicted of two counts of first-degree
murder, Saginaw Circuit Court, Hazen R. Armstrong, J. The
defendant appeals, alleging that the trial court erred: 1) in
denying his motion to suppress evidence which had been seized
as a result of three improper searches, 2) in denying his juror
challenges for cause and his motions for change of venue, and
3) by allowing the prosecutor to make prejudicial remarks to
the jury and by allowing the prosecutor to establish the defend-
ant's lack of employment at the time the charged crimes
occurred. *Held:*

1. The trial court correctly denied the motion to suppress
because the affidavit in support of the search warrant, when
viewed in a common sense manner, afforded the magistrate
sufficient probable cause to issue the search warrant.

2. The denial of the motion for change of venue was not a
clear abuse of the trial court's discretion.

3. There was no abuse of the trial court's discretion in
refusing to dismiss certain of the jurors challenged for cause.

4. Any error which might have occurred as a result of the
prosecutor's remarks which pointed out that the denial of the
defendant's guilt was made by defense counsel and did not
come from the testimony of any witness was cured by an

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 68 Am Jur 2d, Searches and Seizures §§ 64-70.
[2] 68 Am Jur 2d, Searches and Seizures §§ 66, 68.
[4, 7] 21 Am Jur 2d, Criminal Law §§ 419, 427, 428.
[5] 47 Am Jur 2d, Jury §§ 220, 265-268.
[6] 47 Am Jur 2d, Jury §§ 213-216.
[8] 21 Am Jur 2d, Criminal Law §§ 349-353.
[9] 5 Am Jur 2d, Appeal and Error §§ 783, 867.
[10] 5 Am Jur 2d, Appeal and Error §§ 624, 772-774, 809.
　75 Am Jur 2d, Trial §§ 293-295.
Counsel's reference in criminal case to wealth, poverty, of financial
　status of defendant or victim as grounds for mistrial, new trial, or
　reversal. 36 ALR3d 839.

instruction that the defendant's silence could not be considered for any purpose.

5. The admission of evidence about the defendant's unemployment and poverty at the time the murders were committed was improper; however, in light of other overwhelming evidence of the defendant's guilt, he suffered no manifest injustice.

Affirmed.

1. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—AFFIDAVITS—AFFIANTS—STATUTES.

The statute which provides that a magistrate shall issue a search warrant when he finds that there is reasonable or probable cause therefor covers two types of affidavits, namely: one in which the affiant states facts, and one in which the affiant states only informant information; the latter type may be sufficient if the information is reliable, from a credible person and if the affidavit contains affirmative allegations that the informant spoke with personal knowledge of the information (MCL 780.653; MSA 28.1259[3]).

2. SEARCHES AND SEIZURES—SEARCH WARRANTS—AFFIDAVITS—COMMON SENSE APPROACH—MAGISTRATES—ABUSE OF DISCRETION.

An affidavit in support of a search warrant should be viewed in a common sense manner; the Court of Appeals should not substitute its judgment for that of a magistrate unless there has been a clear abuse of discretion in his determination of probable cause.

3. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—EVIDENCE—PROBABILITY OF CRIMINAL ACTIVITY.

A finding of probable cause sufficient to justify issuance of a search warrant may rest upon evidence which is not sufficient to justify conviction and which may not be legally competent in a criminal trial because it is only the probability and not a prima facie showing of criminal activity that is the standard of probable cause.

4. VENUE—CRIMINAL LAW—CHANGE OF VENUE—DISCRETION.

A trial court may properly defer determination on a request for a change of venue in a criminal case until an attempt has been made to select a jury in the county where the crime occurred; it is not an abuse of discretion to follow this established rule.

5. JURY—JURORS—CHALLENGE FOR CAUSE—DISCRETION—COURT RULES.

.A finding of bias or prejudice of a juror challenged for cause is a

matter which is within the discretion of the trial court (GCR 1963, 511.4).

6. JURY—JURORS—CHALLENGE FOR CAUSE—CAPACITY TO RENDER FAIR VERDICT.

A litigant who challenges a prospective juror for cause must show that the juror has preconceived opinions or prejudices, or such other interests or limitations as would impair his capacity to render a fair and impartial verdict.

7. VENUE—CRIMINAL LAW—MOTIONS—DISCRETION.

The granting or denial of a motion for a change of venue is discretionary with the trial court, and the exercise of that discretion will not be disturbed on appeal unless there is a clear showing of abuse of discretion.

8. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO SILENCE.

A criminal defendant has a right to remain silent and no reference or comments should be made to subvert that right.

9. CRIMINAL LAW—PROSECUTOR'S STATEMENTS—FACTUAL BASIS—EVIDENCE—MISCARRIAGE OF JUSTICE—FAIR AND IMPARTIAL TRIAL.

A prosecutor may not make a statement of fact to the jury which is unsupported by the evidence in the case; however, a verdict in a criminal case should not be set aside unless it affirmatively appears that the error complained of has resulted in a miscarriage of justice; the test to be applied is not whether there were some irregularities, but instead did the defendant have a fair and impartial trial.

10. CRIMINAL LAW—EVIDENCE—DEFENDANT'S POVERTY—DEFENDANT'S UNEMPLOYMENT—APPEAL AND ERROR.

Generally it is error to allow the prosecution to introduce the question of a defendant's poverty and unemployment because it is immaterial whether a person is employed or unemployed where proof of an alleged crime is concerned; however, there is no per se rule requiring reversal of a defendant's conviction where questions about the defendant's unemployment are asked; rather the question to be answered in determining whether reversible error occurred in allowing such testimony is whether the trial court abused its discretion in allowing this line of questioning.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert Kaczmarek,*

Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Thick, Bush & Harris,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. VAN VALKENBURG,* JJ.

W. VAN VALKENBURG, J. Defendant was jury convicted on June 16, 1976, of two counts of first-degree murder, contrary to MCL 750.316; MSA 28.548. He was sentenced to life imprisonment on each count and appeals here as of right.

During the evening of August 22, 1975, defendant, with his girlfriend Juanita Clark (a/k/a Juanita Hunt), with whom he was living, together with the victims Arnie Davis and Leo Keenan, occupied their time at a bar in Saginaw, Michigan. Following the closing of the bar all four individuals entered Keenan's pickup truck and drove to 516 N. Fourth Street where Juanita hoped to purchase some marijuana. She exited from the vehicle, according to her testimony, and knocked at the front door of the home. She received no answer. Feeling the need of visiting a bathroom she walked around the side of the house and behind a car. While there she heard shots being fired and upon returning to the street observed defendant walking away from both Davis and Keenan, one of whom was lying on the ground, the other in the truck.

When the police arrived, apparently having been called by someone who heard the shots, they found Keenan dead, Davis mortally wounded, their pockets empty and turned out, and the pickup truck's keys missing.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Later, at approximately 4 a.m., a call was received at police headquarters from an anonymous caller who left his number and insisted on talking only with Captain Edward Chmielewski, chief of detectives. The latter telephoned the number left by the caller and was advised by the informant, hereinafter referred to as I-328, that he picked up Ms. Clark, who was seen hurrying in the rain, at about 2:30 a.m. the night of the killing. Further, she advised him that her "old man Bennie" had just shot two white "dudes" and that she was looking for him. She requested transportation to her home at 1435 Gage Street, where defendant was observed sitting on the front porch.

Officers were dispatched to that address at about 10 a.m. for the purpose of arresting both Thomas and Clark. One policeman was left there as a guard until a search warrant could be obtained. Defendant on appeal has raised three issues for consideration.

## I.

Did the trial court err in denying the motion to suppress the evidence which had been seized as a result of three searches?

Defendant contends that the warrant issued on August 23, 1975, was faulty since the affidavit did not provide reasonable or probable cause.

The statute, MCL 780.651; MSA 28.1259(1), provides that a magistrate shall issue a search warrant when he finds that there is reasonable or probable cause therefor. This is based, however, on an affidavit, the requirements of which are set forth in MCL 780.653; MSA 28.1259(3):

"The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within

the affidavit made before him. The affidavit may be based upon reliable information supplied to the complainant from a credible person, named or unnamed, so long as the affidavit contains affirmative allegations that the person spoke with personal knowledge of the matters contained therein."

The basic requirements of the affidavit are summarized in 2 Gillespie, Michigan Criminal Law & Procedure (1978 rev ed), § 868, pp 712–713:

"The affidavit must contain facts within the knowledge of the affiant, as opposed to mere information and belief or conclusions of the affiant. The facts should be set forth clearly and distinctly and must be such that in law would make out a cause of complaint. It is not for the affiant to draw his own inferences. He must state matters which justify the drawing of them, since the purpose of an affidavit or complaint in support of a search warrant request is to supply the magistrate with reliable information on which the probable cause determination may be based."

Further interpretation is promulgated in *People v Rodriguez,* 65 Mich App 723, 727; 238 NW2d 385 (1975):

"We read the statute as covering two types of affidavits, namely: one in which the affiant states facts, and one in which the affiant states only informant information. The latter type may be sufficient if the information is reliable, from a credible person and if the affidavit contains affirmative allegations that the informant spoke with personal knowledge of the information."

Defendant, in his brief, relies heavily on *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), which does set forth the fundamental test and has been quoted by this Court on many occa-

sions. There the Court held that the affidavit was insufficient. However, that case was distinguished in *People v Jerry Johnson,* 68 Mich App 697, 704–705; 243 NW2d 715 (1976), where the facts were similar to the ones in the case at bar:

"This affidavit also differs from that in *Aguilar* in that the *Aguilar* affidavit simply stated that the information had been received from a credible person, while in the affidavit in the instant case, it was stated that the credible person was 'known to your deponent as a credible and reliable person'. Thus, in the case before us, the affiant is swearing that, by his own personal knowledge, the informant is reliable. The magistrate may choose to believe or disbelieve the affiant; similarly, he would be forced to believe or disbelieve the affiant had it been sworn that the informant had given reliable information in the past. A magistrate may require more information from certain affiants than from others before reaching a determination as to the reliability of anonymous informants in different cases, but that is a decision for the magistrates, and not for this Court. Simply because a magistrate chooses to believe an affiant who claims he has information from an informant known to him to be reliable, is no reason for this Court to conclude that the magistrate has not acted as a 'neutral and detached magistrate' in drawing 'inferences from the facts which led to the complaint'. *Aguilar, supra,* 378 US 115; 84 S Ct 1514; 12 L Ed 2d 729."

Furthermore, the affidavit in support of a search warrant, according to another line of thinking, must be viewed in a common-sense manner. *People v Iaconis,* 29 Mich App 443, 454; 185 NW2d 609 (1971), affirmed by the Supreme Court in *People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972).

This theory was continued in *People v Coffey,* 61 Mich App 110, 117; 232 NW2d 320 (1975), and

*People v Battle,* 71 Mich App 136, 144; 246 NW2d 389 (1976).

Quoting further from *Iaconis, supra,* at 462, it was concluded that

"This Court may not substitute its judgment for that of the magistrate unless there has been a clear abuse of discretion in his determination of probable cause." (Citations omitted.)

A warrant, issued pursuant to an affidavit, reviewed in a common-sense manner, is preferable to action taken without one. *United States v Ventresca,* 380 US 102; 85 S Ct 741; 13 L Ed 2d 684 (1965).

Further, the United States Supreme Court held that a finding of probable cause sufficient to justify issuance of a search warrant may rest upon evidence which is not sufficient to justify conviction and which may not be legally competent in a criminal trial because it is only the probability, and not a prima facie showing, of criminal activity that is the standard of probable cause. *Draper v United States,* 358 US 307, 311; 79 S Ct 329; 3 L Ed 2d 327 (1959).

Application of the above rules to the affidavit in question is now in order. Information furnished by the informant on three prior occasions had been "proven to be true and correct". This conclusion is stated as a fact and not a mere inference. A penciled-in paragraph requested by the judge stated in substance that a "shooting" took place "in the 500 block, N Fourth Street" and that Juanita Clark was known to have been in the vicinity at the time. She was delivered to 1435 Gage Street, which residence is described in detail.

Therefore, we come to the same decision as this

Court did in *Iaconis, supra,* at 457, where it was held:

"We conclude, upon the authority of the above cases, that the affidavit in question, viewed in a common-sense manner, afforded the magistrate sufficient probable cause to issue a search warrant in this case, and that his action was proper."

The trial court was therefore correct in denying the motion to suppress the evidence.

## II.

Did the trial court err in denying defendant's juror challenges for cause and his motions for change of venue?

The trial judge denied the motion for a change of venue pending an attempt to impanel a jury. That action was proper according to the rule promulgated in *People v Swift,* 172 Mich 473, 479; 138 NW 662 (1912).

This Court in *People v Collins,* 43 Mich App 259, 262; 204 NW2d 290 (1972), stated:

"Since *People v Swift,* 172 Mich 473 (1912), it has been the rule that it is proper for a trial court to defer determination on a request for a change of venue until an attempt has been made to select a jury in the county where the crime occurred. Defendant has not cited, nor has independent research disclosed, any authority which overrules *Swift.* Following an established rule is not an abuse of discretion."

Turning now to the question of juror challenges, the record shows that some 60 venirepersons were examined before the jury was sworn. At least 40 of these individuals had not heard of defendant and were not familiar with the pretrial press coverage.

Many of these individuals who had read something about the charged crime stated that no opinion as to guilt had been formed. The fact that defendant had exhausted his peremptory challenges is not controlling. *Swift, supra,* at 482.

GCR 1963, 511.4 provides in part:

"The following are grounds for challenges for cause:

\*   \*   \*

(3) that the person is biased for or against a party or attorney;

(4) that the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be."

Therefore, according to the rule, the finding of bias or prejudice of a challenged juror is a matter which is within the trial court's discretion.

A litigant who challenges a prospective juror must then show that the latter "has preconceived opinions or prejudices, or such other interests or limitations as would impair his capacity to render a fair and impartial verdict". 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 466.

A review of the record, in light of these rules, leads us to the conclusion that the trial judge did not abuse his discretion in refusing to dismiss the jurors for cause.

The entire record of this case shows a remarkable parallel to *Collins, supra,* and *People v Ranes,* 63 Mich App 498; 234 NW2d 673 (1975).

Collins was tried in Washtenaw County for a single murder following the killing of several co-eds in and around Ypsilanti. It was held by this Court, in spite of the pretrial publicity surround-

ing these murders, that the defendant received a fair and impartial trial.

In *Ranes,* we have an almost exact duplicate, both as to the number of charges and the publicity, of the situation as it existed here. Ranes' plan of operation was to rape, rob and murder his victims. In fact, two young ladies suffered their fates in one day. At the time of the trial in that case, the defendant had been convicted of second-degree murder and first-degree murder in the perpetration or attempted perpetration of rape. See *People v Ranes,* 58 Mich App 268; 227 NW2d 312 (1975).

We quote from the opinion in the second appeal, *People v Ranes,* 63 Mich App at 503:

"While either party may be granted a change of venue 'upon good cause shown', MCLA 762.7; MSA 28.850, the denial of such motion rests in the trial court's discretion. To set aside such a decision, a clear showing of abuse on the part of the trial court must be demonstrated."

Accordingly we find, following a careful review of the record, that no abuse of discretion existed as to the denial of the motion for a change of venue or as to the challenges for cause.

### III.

Did the trial court err by allowing the prosecutor to make prejudicial remarks to the jury and by allowing the prosecutor to establish defendant's lack of employment at the time the charged crimes occurred?

During closing arguments, defense counsel argued that his client had repeatedly denied that he had robbed the victims. The prosecutor, in rebut-

tal, referred to defendant's plea of not guilty, but pointed out that defendant's denial of guilt was presented by defense counsel and did not come from the testimony of any witness.

It is, of course, well settled that a criminal defendant has a right to remain silent at trial and no reference or comments should be made to subvert that right. *People v Balog,* 56 Mich App 624, 629; 224 NW2d 725 (1974).

However, if error did occur by virtue of these remarks, it was cured by the instruction given by the trial court that defendant's silence could not be considered for any purpose.

Also, in the closing arguments, the prosecutor made the following statements:

"The importance of a felony murder case, the importance of making a homicide complete during the course of a robbery, first-degree murder, it is not the value of the article that is stolen, it is the fact that someone's death has occurred during the robbery.

"The Legislature has decided that they want to put high penalties, high charges on people going around committing robberies, armed robbers; and if a death follows, obviously you can't bring that person back to life; so the Legislature is trying to make homicides committed during armed robbery in this case, that's what we're dealing with, homicide during the commission of an armed robbery, they're trying to make it a very serious offense; and I think that the only reasonable inference that you can draw from the evidence in this case is that Bennie Thomas has committed a street mugging, armed robbery, on Fourth Street."

Perhaps the making of these remarks was attributable to the fact that this was a highly emotional murder trial, and that the remarks were made in the heat of the closing hours thereof.

The conclusions of this Court in *People v Wheat,*

55 Mich App 559, 565; 223 NW2d 73 (1974), cover this subject:

"It is well settled that a prosecutor may not make a statement of fact to the jury which is unsupported by the evidence in the case. However, it is equally well settled that a verdict in a criminal case cannot be set aside unless it affirmatively appears that the error complained of has resulted in a miscarriage of justice. MCLA 769.26; MSA 28.1096; *People v Green,* 7 Mich App 346, 354; 151 NW2d 834, 838 (1967).

"A prosecuting attorney is properly held to a very high standard of performance. Nevertheless, the courts have recognized that infallibility will never be achieved:

" 'Great care should be taken by prosecuting officers and trial courts that no statement be made in the presence of jurors which would jeopardize a defendant's right to a fair trial. But in the haste and heat of a trial it is humanly impossible to obtain absolute perfection, and of necessity some allowance must be made in determining whether impromptu remarks are to be held prejudicial. Statements should not be held prejudicial if they are made in good faith, and, when fairly construed, they do not appear to have been such as influenced the jury adversely to the rights of the accused.' *People v Burnstein,* 261 Mich 534, 538; 246 NW 217, 218 (1933)."

Furthermore, "the test to be applied is not whether there were some irregularities but instead did the defendant have a fair and impartial trial". *People v Williams,* 11 Mich App 62, 66; 160 NW2d 599, 601 (1968), *aff'd,* 383 Mich 118; 174 NW2d 564 (1970). Therefore, no reversible error was committed in the prosecutor's argument to the jury.

Counsel for defendant, during cross-examination of Ms. Clark, elicited testimony to the effect that Arnie Davis had given her money and had promised to provide for her and her baby if she would get rid of defendant. The prosecutor, arguing that

defense counsel opened the door, established that defendant was unemployed at the time the crimes occurred. The court agreed with the prosecution's argument and allowed the evidence of unemployment to be presented.

Defense counsel objected to this questioning and on appeal maintains, relying on *People v Johnson,* 393 Mich 488, 496; 227 NW2d 523 (1975), that it was error to introduce the question of poverty and unemployment. Generally this would be true since it is immaterial whether a person is employed or unemployed where proof of an alleged crime is concerned.

It has been held by this Court, though, that the Michigan Supreme Court did not set out a per se rule requiring reversal where questions of a defendant's unemployment are asked. Rather, the question to be answered in determining whether reversible error occurred in allowing such testimony is whether the trial court abused its discretion in allowing this line of questioning. *People v Thomas Jones,* 73 Mich App 107, 109; 251 NW2d 264 (1976).

Here, however, counsel for defendant merely brought out that he was not providing for Ms. Clark and her child, not that he was financially unable to do so because of the fact that he was unemployed. Under these circumstances, it would appear that the door was not opened for such questioning.

The application of *Johnson* to situations of this kind has brought about emphasis upon various factors by different panels of this Court.

In *People v Jackson,* 77 Mich App 392, 400; 258 NW2d 89 (1977), we find this attitude:

"Absent an express prohibition by the Supreme

Court, we would hold that, with some limitations, a defendant's need for money may be shown in order to establish a motive for a theft offense. We do not believe that *People v Johnson, supra,* prohibits that holding."

See *People v Henderson,* 80 Mich App 447, 451; 264 NW2d 22 (1978), for a list of cases dealing with this subject.

Therefore, when we isolate Ms. Clark's testimony in this area from the balance of the record, it would be concluded, in light of this line of cases, that the trial court abused its discretion in permitting the prosecutor to proceed as he did.

However, MCL 769.26; MSA 28.1096, provides:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or *the improper admission or rejection of evidence,* or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the *error* complained of has resulted in a miscarriage of justice." (Emphasis added.)

The crucial fact, in the instant case, was whether or not defendant committed the crimes charged in the information. The jury was confronted with a huge amount of testimony concerning the incident, with only a small part thereof being taken up by the error complained of. The evidence of guilt was overwhelming. Accordingly, defendant has not shown that he suffered a "miscarriage of justice".

In *People v Martin,* 75 Mich App 6, 14; 254 NW2d 628 (1977), it is stated:

"The prosecution did not mention defendant's unemployment or station in life during closing argument and

the brief reference to this fact in this lengthy trial was not prejudicial."

Absent proof of a manifest injustice, there can be no reversal of the defendant's conviction. MCL 769.26; MSA 28.1096.

There has been no such showing here which would justify the reversal of this conviction.

Affirmed.